IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA ANN DOSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1861 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Cross-Motion for Summary Judgment (Doc. 18) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 20). The court has considered the motions, the supporting briefs, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II ("DIB") and for supplemental security income under Title XVI ("SSI") of the Social

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc. 12, Ord. Dated August 24, 2018.

Security Act ("the Act").

## A. **Vocational and Medical History**

Plaintiff was born on October 26, 1963, and was forty-nine years old on the alleged disability onset date of June 1, 2013.[2] Plaintiff received an associate's degree.[3] The only job that qualified as past relevant work was as a hotel cook.[4] Plaintiff has a history of medical treatment for a variety of impairments, including breast atypical ductal hyperplasia ("ADH"), gastroesophageal reflux disease ("GERD"), a small hiatal hernia, obesity, right shoulder injury, asthma, and allergic rhinitis.[5] In 1999, Plaintiff had eight inches of her colon removed.[6]

On May 29, 2014, Plaintiff underwent a needle localized segmental mastectomy due to a diagnosis of ADH.[7] After the lumpectomy, Plaintiff was prescribed Tamoxifen to reduce the risk of breast cancer, but Plaintiff only took the medication for a month due to severe gastrointestinal side effects.[8] Genetic

---

[2]     See Tr. of the Admin. Proceedings ("Tr.") 54, 60, 68, 76, 185, 194, 200, 230.

[3]     See Tr. 37-38.

[4]     See Tr. 39.

[5]     See generally Tr. 334-1279.

[6]     See Tr. 841. At her hearing, Plaintiff stated that the removal of eight inches of her intestines was due to a cancer diagnosis. See Tr. 44-45.

[7]     See Tr. 344.

[8]     See Tr. 45, 469-72, 752, 1232, 1240.

testing produced benign results.[9]  Plaintiff returned for regular check-ups with no recurrence.[10]  Treatment notes dated September 16, 2014, and November 23, 2016, stated that examination of Plaintiff's breasts revealed "no breast masses, no skin or nipple changes or discharge, no axillary nodes."[11]

In January 2013, prior to the alleged onset date, a colonoscopy revealed diverticulosis throughout the colon.[12]  In May 2014, Plaintiff was seen for a small a hiatal hernia at which time surgery was considered.[13]  An x-ray in October 2015 confirmed the presence of "a very small sliding hiatus hernia" and a small amount of gastroesophageal reflux.[14]  On February 5, 2016, Plaintiff expressed no interest in having surgery to correct the hernia, and, on November 30, 2016, the treatment note stated, "No indication for any surg[]ical intervention for hiatal hernia."[15]

At the February 2016 appointment, a review of her gastrointestinal system was negative for dysphagia, odynophagia, dyspepsia, nausea, vomiting, change in bowel habits, melena, diarrhea, constipation, abdominal pain, and jaundice and positive

---

[9]   See Tr. 468-70.

[10]   See, e.g., Tr. 45, 1111-13.

[11]   Tr. 471, 1232.

[12]   See Tr. 727.

[13]   See Tr. 1241.

[14]   Tr. 895-96.

[15]   See Tr. 1223.

only for reflux symptoms.[16]  A later treatment note stated that Plaintiff "ha[d] increased her activity and converted to a healthier diet and her GERD symptoms ha[d] greatly improved, esp[ecially] at night."[17]

At several appointments, Plaintiff's treatment providers explained the importance of maintaining a healthy weight and recommended diet and exercise.[18]  In February 2016, Plaintiff reported to her treatment provider that she had been much more active and had lost weight.[19]

Plaintiff injured her right shoulder in October 2014 by throwing a brick backwards while building a fence.[20]  At an emergency room examination two days later, Plaintiff exhibited "no bony tenderness, no swelling, no effusion, no deformity and normal pulse."[21]  Plaintiff was tender to palpation at the right deltoid and triceps, but not tender at the clavicle or the acromioclavicular ("AC") joint.[22]  She was experiencing pain with abduction and adduction but demonstrated a full range of motion and

---

[16]    See Tr. 1241.

[17]    Tr. 1224.

[18]    See, e.g., Tr. 1233, 1240.

[19]    See Tr. 1241.

[20]    See Tr. 57, 63, 73, 81, 338.

[21]    See Tr. 338-39.

[22]    See Tr. 339.

5/5 strength in her right shoulder.[23]   The physician found her symptoms to be most consistent with a muscle strain.[24]   An MRI performed in May 2015 revealed no rotator cuff tear and only mild AC joint hypertrophy.[25]   Plaintiff received physical therapy briefly, which helped alleviate her pain.[26]

In December 2013, Plaintiff reported that she had been suffering from coughing and wheezing for years but "ha[d] never had testing for asthma and ha[d] had no inhaler use in the past" with symptoms unchanged since their onset.[27]   A pulmonary function test in March 2014 revealed normal spirometry and normal resting room air oxygen saturation.[28]   In October 2014, a pulmonary examination showed normal effort and breath sounds.[29]   A month later, Plaintiff complained of worsening nighttime cough, and the physician opined that Plaintiff might have had cough variant asthma.[30]

On December 2, 2013, Plaintiff reported that her allergy symptoms were "relatively well controlled with [Z]yrtex and

---

[23]    See id.

[24]    See Tr. 73, 81, 339.

[25]    See Tr. 1277.

[26]    See Tr. 769.

[27]    Tr. 542.

[28]    See Tr. 350-51.

[29]    See Tr. 338.

[30]    See Tr. 455.

Flonase."[31]  At appointments in November 2014, December 2014, and February 2015, the treatment providers noted that Plaintiff expressed "[n]o complaints of allergic reactions like chest tightness, itching, rashes, swelling, etc."[32]

On June 22, 2015, Plaintiff appeared for a consultative internal-medicine examination with Farzana Sahi, M.D., ("Dr. Sahi").[33]  Plaintiff's chief complaint at the time was back pain that, Plaintiff explained, resulted from a fall in 2014.[34]  The history section of the report stated:

> She described her pain as dull, located in the upper and lower back and radiation to shoulders and legs.  No surgery has been done on it.  No injection has been given.  She takes narcotics with good relief to the pain.[35]

Plaintiff reported that she could walk a block without an assistive device, stand and sit for thirty minutes at a time each, bend, and lift up to ten pounds.[36]

On review of systems, Dr. Sahi noted no cough, shortness of breath, wheezing, sputum production, or hempotysis for pulmonary and no dysphagia, vomiting, diarrhea, nausea, bleeding per rectum,

---

[31]     Tr. 542.

[32]     Tr. 406, 423, 445.

[33]     See Tr. 840-42.

[34]     See Tr. 840.

[35]     Id.

[36]     See id.

abdominal pain, or constipation for gastrointestinal.[37]  Plaintiff

did complain of extremity pain and back pain.[38]  On physical

examination, the doctor observed that Plaintiff was slightly obese;

in all other areas, the examination produced normal results.[39]  In

addition to stating that the examination was normal, Dr. Sahi noted

back pain and mild spodylosis of the spine as revealed by a

contemporaneous x-ray.[40] Dr. Sahi found Plaintiff's activities were

not limited by any physical restriction.[41]

## B.  Application to SSA

Plaintiff applied for disability insurance benefits and

supplemental security income on September 18, 2014, alleging

disability due to cancer and diverticulitis.[42]  In a Function Report

dated November 29, 2014, Plaintiff explained that, when her stomach

hurt, she could not "do anything but go to the bathroom."[43]  She

reported that daily chores caused pain in her back, neck, and arm.[44]

---

[37]     See Tr. 841.

[38]     See id.

[39]     See Tr. 841-42.

[40]     See Tr. 842-43.

[41]     See Tr. 842.

[42]     See Tr. 54, 60, 68, 76, 185-93, 200-01, 234.  Plaintiff signed the
handwritten SSI application on July 17, 2014, but the electronic entry for SSI
listed the application date as November 15, 2014.  See Tr. 193-94.  The
electronic DIB application listed the application date as September 19, 2014.
See Tr. 200.  The disability determinations for both SSI and DIB identify
September 18, 2014, as the application dates.  See Tr. 54, 60, 68, 76.

[43]     Tr. 255.

[44]     See id.

Plaintiff's daily activities included feeding, walking, and bathing her dogs.[45]  The only limitation in her ability to care for herself that she documented was that hygiene tasks took additional time.[46]

Plaintiff provided contradictory answers on meal preparation, stating that she did not prepare her own meals but also answering that she prepared food or meals on a daily basis and that the preparation time depending on what she was cooking.[47]  Plaintiff indicated that she was able to wash dishes and laundry and was able to work in the yard.[48]  She reported that she was able to go outside alone, to walk, to drive, and to shop in stores, by phone, by mail or online.[49]  The two places she listed as places she went on a regular basis were her church and the gym.[50]  She noted no limitation in handling her finances.[51]

Julie Patel, M.D., ("Dr. Patel"), a treating physician for Plaintiff's asthma and allergic rhinitis, completed an RFC Questionnaire on November 3, 2014.[52]  Dr. Patel reported that she had treated Plaintiff for asthma and allergic rhinitis monthly

---

[45]  See Tr. 256.

[46]  See id.

[47]  See Tr. 257.

[48]  See id.

[49]  See Tr. 258.

[50]  See Tr. 259.

[51]  See Tr. 258.

[52]  See Tr. 373-75.

since December 2, 2013, and opined that Plaintiff had been subject to the limitations and restrictions listed in the questionnaire since that date.[53] The only side effect from the medication she prescribed Plaintiff was drowsiness.[54]

The doctor listed coughing, wheezing, rhinorrhea, and sneezing as all of Plaintiff's symptoms and stated her prognosis was good.[55] These symptoms, the doctor opined, would often be "severe enough to interfere with attention [and] concentration required to perform simple work-related tasks[.]"[56] Dr. Patel opined that Plaintiff would not need to take breaks in excess of the typical morning, lunch, and afternoon breaks and that Plaintiff was physically capable of working eight-hour days, five days a week on a sustained basis.[57] However, Dr. Patel opined that Plaintiff would be limited to sitting for a total of four hours in an eight-hour workday and standing or walking for a total of two hours in an eight-hour workday, that she could lift no more than ten pounds, and that she would miss one or two days of work each month.[58]

On March 6, 2015, the Social Security Administration found

---

[53] See Tr. 373, 375.

[54] See Tr. 373.

[55] See id.

[56] Id.

[57] See Tr. 373-74.

[58] See id.

Plaintiff not disabled at the initial level of review.[59]  The reviewing medical consultant found Plaintiff's impairments to be non-severe and commented that her alleged limitations caused by the reported symptoms were not fully supported by the record.[60]  On April 10, 2015, Plaintiff requested reconsideration.[61]

In an April 2015 report, Plaintiff reported that her medication made her "very drowsy," rendering her unable to drive and unmotivated to cook or clean.[62]  She also reported that her medications caused forgetfulness.[63]  Answering the question about her ability to perform house and yard chores, Plaintiff stated that she was able to "wash dishes[,] laundry[,] household repairs[,] ironing[,] mowing[,] tree trimming[.]"[64] Raking the yard for even a few minutes, however, caused Plaintiff to sneeze and cough.[65]  She reported attending church three times a week.[66]  Other than mentioning her "back go[ing] out" and her "severe" allergies, Plaintiff's condition changed very little between reports.[67]

---

[59]    See Tr. 54-67, 88-95.

[60]    See Tr. 57, 63.

[61]    See Tr. 96.

[62]    Tr. 285.

[63]    See Tr. 293.

[64]    Tr. 301.

[65]    See Tr. 302.

[66]    See Tr. 303.

[67]    Tr. 305, 306; see also Tr. 291-304.

On August 3, 2015, the SSA reconsidered Plaintiff's record, including the allegation of worsening back pain, and found her not disabled.[68]  In addition to the medical evidence reviewed at the initial review, the medical consultant had the benefit of Dr. Sahi's internal-medicine examination.[69]  Nevertheless, the medical consultant agreed with the prior assessment that Plaintiff did not have a severe impairment.[70]

On September 4, 2015, Plaintiff requested a hearing before an ALJ.[71]  On November 16, 2016, the ALJ granted Plaintiff's request and scheduled the hearing on February 16, 2017.[72]

## C.  Hearing

During the hearing, Plaintiff and a vocational expert testified.[73]  Plaintiff was represented by an attorney.[74]  The ALJ began the hearing by examining Plaintiff about personal information and work history.[75]  In response to the questioning, Plaintiff explained that she could not work due to rapid onset of digestive

---

[68]    See Tr. 68-85, 97-102.

[69]    See Tr. 69-74, 77-82, 840-42.

[70]    See Tr. 73-74, 81-82.

[71]    See Tr. 103-05.

[72]    See Tr. 118, 147, 172.

[73]    See Tr. 33-53.

[74]    See Tr. 33.

[75]    See Tr. 37-39.

symptoms that would force her to stay at home near a restroom.[76]
She related that she was able to dress and bathe herself when her
arm, which stiffened "every now and then when it g[ot] real cold,"
was not hurting and that she was not able to perform household or
yard chores to the extent that she had been able previously.[77]

Plaintiff stated that she could not sit very long and, at that
time, asked to stand at the hearing because she was in pain.[78] When
asked about the length of time she was able to sit and stand,
Plaintiff said four hours and two hours, respectively.[79] Plaintiff
was unable to estimate how far she could walk.[80] Regarding lifting,
Plaintiff reported that a doctor, whose name she could not recall
recommended that she lift no more than five pounds due to her
stomach issues.[81]

Plaintiff listed diverticulitis, asthma, and allergies as the
impairments for which she took medication and said that she took
more than fourteen medications including medication for abdominal
and back pain.[82] She described the abdominal pain as so intense
after attempting to sweep the kitchen that she had to stop and go

---

[76]    See Tr. 39-40.

[77]    Tr. 40.

[78]    See id.

[79]    See Tr. 41.

[80]    See id.

[81]    See id.

[82]    See Tr. 43-44.

to bed.[83]  The only side effect she identified was drowsiness.[84]

Plaintiff said that she was allergic to multiple things, including mold, dust mites, dog dander, fish, shellfish, nickel, peanut butter, and gluten.[85]  Plaintiff reported that she kept her dogs bathed because she was unwilling to give them away and that she carried an EpiPen in case of an allergic reaction to food or dust mites.[86]  Plaintiff also stated that her right shoulder was injured while she was working as a "[h]ome care sitter" when her patient rolled over on her arm.[87]

The vocational expert testified that Plaintiff's job as a cook was performed at a medium level of exertion and was skilled.[88]  The attorney presented a hypothetical individual of Plaintiff's age, education, and work experience limited to sitting for four hours in an eight-hour workday and lifting up to ten pounds occasionally.[89]  The hypothetical individual would need to take unscheduled breaks every four hours for thirty minutes and would "miss one or two days a month on a consistent and sustained basis."[90]  The vocational

---

[83]    See Tr. 44.

[84]    See Tr. 43.

[85]    See Tr. 46.

[86]    See Tr. 46-47.

[87]    See Tr. 38.

[88]    See Tr. 51.

[89]    See Tr. 52.

[90]    Id.

expert opined that such an individual could not perform any job existing in the national or regional economy.[91]

## D.  Commissioner's Decision

On March 29, 2017, the ALJ issued an unfavorable decision.[92] The ALJ found that Plaintiff had not engaged in substantial gainful activity since alleged onset date.[93]  The ALJ recognized "the following medically determinable impairments: status post lumpectomy for [ADH] of the right breast, [GERD], hernia, obesity, asthma, and right shoulder injury."[94]  However, the ALJ found none, individually or in combination, to significantly limit Plaintiff's ability to perform basic work-related activities over a period of twelve consecutive months and, therefore, that none was severe.[95]

After listing examples of basic work-related activities, the ALJ addressed each of the medically determinable impairments.  In doing so, she considered Plaintiff's subjective testimony, her activities of daily living, and her prescribed medications.[96]  The ALJ noted that Plaintiff's physicians had prescribed medications for diverticulitis, asthma, allergies, and a hernia and that

---

[91]     See Tr. 52-53.

[92]     See Tr. 18-27.

[93]     See Tr. 23.

[94]     Id. (emphasis omitted).

[95]     See id.

[96]     See Tr. 24-25.

Plaintiff reported drowsiness as a side effect of the prescribed medications.[97]  The ALJ also stated that Plaintiff said she took Tramadol for pain in her back, stomach, and right side.[98]  Turning to the objective medical evidence, the ALJ discussed Dr. Sahi's consultative examination and the treatment notes for Plaintiff's impairments.[99]

The ALJ concluded that Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . .[:]"

> In terms of the claimant's alleged gastrointestinal symptoms and hernia, treatment notes show[] that the symptoms were much improved with medication and lifestyle changes[] and that there was no indication for any surgical intervention for a hiatal hernia.
>
> In terms of the claimant's alleged pain, the consultative examiner reported that[,] despite the complaint of back pain, the physical examination was normal and that the claimant had no physical restriction.  The claimant injured her right shoulder in a fall, but an MRI showed only mild AC joint hypertrophy.  Physical therapy helped the claimant's symptoms.
>
> In addition, a pulmonary function test done in March 2014 was normal.
>
> The claimant is obese . . . . [But] [p]rogress notes throughout the record . . . show that the claimant reported that she was exercising at least 30 minutes a day [f]or three times a week or more[.]  Recent treatment notes show that the claimant complained of no cardiovascular, respiratory, gastrointestinal, genitourinary, or musculoskeletal symptoms.  Thus,

---

[97]    See Tr. 25.

[98]    See id.

[99]    See Tr. 25-26.

15

obesity is considered as non[]severe.[100]

The ALJ then explained the weight given the medical opinions in the record, finding that Dr. Sahi's opinion that Plaintiff had no physical restriction and the medical consultants' opinions that Plaintiff had no severe impairment were entitled to great weight.[101] The ALJ afforded some weight to Dr. Patel's opinion that Plaintiff was "physically able to work" but found the opinion that Plaintiff was limited to a sedentary level of activity not supported by the record evidence.[102]

The ALJ found that Plaintiff was not disabled at any time from June 1, 2013, the alleged onset date, through March 29, 2017, the date of the ALJ's decision.[103]

On April 14, 2017, Plaintiff appealed the ALJ's decision.[104] On February 2, 2018, the Appeals Council sent Plaintiff a letter, notifying her that it had granted the request to review the ALJ's decision.[105] The letter explained that the Appeals Council found that the ALJ's decision was not supported by substantial evidence because the ALJ failed to address the severity of allergic

---

[100]    Tr. 26.

[101]    See Tr. 27.

[102]    Id.

[103]    See Tr. 21, 27.

[104]    See Tr. 178-79.

[105]    See Tr. 180-83.

rhinitis.[106]

The Appeals Council reviewed the administrative record on the severity of that impairment, noting that, at medical appointments, Plaintiff was never in active distress, repeatedly denied complaints of allergic reaction, and was not assessed any limitations.[107]  Further, according to the Appeals Council, the medical evidence of record did not support Dr. Patel's opinions in the RFC Questionnaire and gave them little weight because Dr. Patel "did not provide objective findings to support the limitations provided" and "[t]he medical evidence of record d[id] not support Dr. Patel's opinion."[108]

On these bases, the Appeals Council proposed a decision finding that Plaintiff did not have a severe impairment or combination of impairments "[a]bsent additional medical evidence or pertinent legal argument."[109]  The Appeals Council allowed Plaintiff thirty days to supplement the record with "a statement about the facts and the law in [her] case or additional evidence[.][110]

On March 28, 2018, the Appeals Council issued a notice of its unfavorable decision.[111]  In the decision itself, the Appeals

---

[106]    See Tr. 180-81.

[107]    See Tr. 181.

[108]    Id.

[109]    Tr. 182.

[110]    See id.

[111]    See Tr. 1-3.

17

Council acknowledged the statement submitted by Plaintiff but found that it did not provide a basis for changing the Appeals Council's proposed decision.[112]  The decision also acknowledged April 2017 and February 2018 medical records submitted by Plaintiff but disregarded those records as they post-dated the ALJ's decision.[113]

The Appeals Council adopted the ALJ's conclusions concerning Plaintiff's alleged symptoms and agreed with the ALJ's conclusions at steps one and two.[114]  However, the Appeals Council also concluded that Plaintiff's allergic rhinitis was a medically determinable impairment that was not severe.[115]  Accordingly, the Appeals Council determined that Plaintiff was not disabled.[116]  The Appeals Council's decision was the final decision of the Commissioner.[117]  After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[118]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of

---

[112]    See Tr. 4, 333.

[113]    See id.

[114]    See Tr. 5.

[115]    See id.

[116]    See Tr. 6.

[117]    See Tr. 1.

[118]    See Tr. 1-2; Doc. 1, Pl.'s Compl.

whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless [s]he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to [a Listing] will be considered disabled

without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. §§ 404.1520, 416.920. The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B. **Substantial Evidence**

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)(internal quotations marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. It only requires "more than a mere scintilla." Id.

The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices or medical findings support the Commissioner's decision should the court overturn it. See Salmond v. Berryhill, 892 F.3d 812, 819 (5th Cir. 2018). In

applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits. Plaintiff articulates one error in the ALJ's decision: The ALJ erred in not finding any of Plaintiff's impairments to be severe despite Dr. Patel's RFC questionnaire opining that Plaintiff was limited to a sedentary level of work. Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

A qualifying physical or mental impairment must be "shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. An impairment or combination of impairments is severe when it "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); see also §§ 404.1522(a), 416.922(a)(defining non-severe impairments). Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" including "walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, . . . handling[,]" "seeing, hearing, . . . speaking[,]" employing judgment, "[d]ealing with changes in a routine work setting[,]" "[u]nderstanding, carrying out, and remembering simple instructions[,]" and "[r]esponding appropriately to supervision, co-workers and usual work situations[.]" 20 C.F.R. §§ 404.1522(b), 416.922(b).

In contrast, an impairment is not severe, pursuant to Fifth Circuit precedent, "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Salmond, 892 F.3d at 817 (emphasis omitted)(quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)). Concurrent impairments that are severe in combination meet this step if the combined severe effect lasts or can be expected to last for at least twelve months. See 20 C.F.R. §§ 404.1523, 416.923. The claimant bears the burden to prove a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. See 42 U.S.C. § 423(d)(1)(A); Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000). The Fifth Circuit describes this burden as de minimis. See Salmond, 892 F.3d at 817.

Plaintiff argues that Plaintiff's gastrointestinal impairments were severe, challenging the ALJ's dismissal of the severity of these impairments based on treatment notes indicating improvement.

Plaintiff argues, "At no point in the medical record that the ALJ points to does it say that Plaintiff is no longer impaired, only that there is an improvement. There is no further discussion of the impairment other than a reference in passing when dismissing findings by . . . Plaintiff's treating physician."[119]

Plaintiff's argument is not persuasive. Salmond, cited by Plaintiff, held that the ALJ erred in deciding that the claimant in that case had "failed to carry his burden of demonstrating that his impairments were severe" because the record contained "insufficient evidence to support the ALJ's conclusion." Salmond, 892 F.3d at 817, 819. In that case, all of the medical professionals who evaluated the claimant opined that his impairments would interfere with his ability to work. See id. at 817-18.

Here, Plaintiff cites no evidence that her alleged impairments interfered more than slightly with her ability to perform work-related activities. She points to no medical profession who opined as much. She only criticizes the ALJ for relying on her report of improvement of her gastrointestinal issues, improvement that resulted in Plaintiff's and her treatment providers' consensus that no medical intervention was necessary. Plaintiff's attempt at shifting to the Commissioner her burden of producing evidence of a severe impairment fails. The fact that Plaintiff's gastrointestinal issues were improving, coupled with the complete

---

[119]   Doc. 21, Pl.'s Mem. of Law in Support of Pl.'s Cross-Mot. for Summ. J. p. 7.

lack of evidence that they caused more than a minimal effect on Plaintiff, suffices as substantial evidence in this case.

In her argument regarding severity, Plaintiff relies on Dr. Patel's RFC questionnaire and challenges the weight afforded it by the ALJ. Dr. Patel was not asked to opine on the severity of Plaintiff's asthma and allergic rhinitis, the diagnoses for which Dr. Patel treated Plaintiff. Rather, the questionnaire focused on all of the limitations resulting from Plaintiff's impairments of asthma and allergic rhinitis and on her ability to work despite the limitations.

The court first notes that Plaintiff's RFC is not relevant if none of Plaintiff's impairments qualified as severe. The court further notes that Dr. Patel's opinions on Plaintiff's abilities to sit, stand, walk, and lift, as well as other similar physical abilities have no obvious connection to her asthma and allergic rhinitis. Dr. Patel's fails to explain any connection, which is not to lay blame on Dr. Patel as she was not asked. Dr. Patel's opinions that Plaintiff would need no more than the typical workday breaks but would likely be absent once or twice a month are relevant. However, the former supports an ability to maintain employment, and the latter is inconsistent with Dr. Patel's other relevant opinion stating that Plaintiff is physically capable of working a forty-hour week on a sustained basis.

Regarding the weight given Dr. Patel's opinions, first by the

ALJ and then on review by the Appeals Council, the SSA is required to evaluate every medical opinion in the record and decide what weight to give each.  See 20 C.F.R. §§ 404.1527(c), 416.927(c).

> When the determination or decision . . . is a denial[,] . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5; see also 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

From Plaintiff's perspective, the entirety of Dr. Patel's "functional assessment of Plaintiff was dismissed from a blanket statement that the medical evidence did not support it."[120]  In fact, the ALJ addressed Dr. Patel's RFC opinions, determining they were entitled to some weight with regard to Plaintiff's ability to perform sustained work activities but were not wholly supported because Dr. Patel failed to perform a function-by-function assessment.  The Appeals Council reviewed that determination and decided the ALJ had not provided sufficient reasons for the weight she afforded Dr. Patel's opinion.

On its own review, the Appeals Council determined that the RFC Questionnaire was entitled to little weight because the limitations identified in the RFC were not supported by medical evidence and

---

[120]    Doc. 21, Pl.'s Mem. of Law in Support of Pl.'s Cross-Mot. for Summ. J. p. 8.

there was no indication in the record that Plaintiff's allergic rhinitis was severe. The Appeals Council's decision was sufficient to meet the Commissioner's burden of providing reasons for discounting Dr. Patel's opinion.

Plaintiff's argument that the ALJ erred by failing to evaluate the diagnosis of diverticulosis except to list it as a condition for which Plaintiff took medication is meritless. Despite the diagnosis of diverticulosis, the record does not reflect that associated symptoms rendered her incapable of engaging in any substantial gainful activity during the relevant period. The mere mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that individual's functional capacity. Cf. Johnson v. Sullivan, 894 F.2d 683, 685 (5th Cir. 1990)(referring to a diagnosis as only part of the evidence that must be considered). Plaintiff points to no evidence that diverticulosis was not controlled by medication and that it caused her more than a slight abnormality with minimal effect on Plaintiff.

Plaintiff offered other arguments based on flawed interpretations of the ALJ's determinations. None deserve discussion, much less merit.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**SIGNED** in Houston, Texas, this 23rd day of September, 2019.

_____
U.S. MAGISTRATE JUDGE